**F. Leland JONES, Appellant,**

**v.**

**Fred B. HULSE, General Chairman of Bar Committees of the Missouri Bar Administration, Forrest M. Hemker, C. Wallace Walter, Clyde J. Linde and James M. Reeves, Members of the Advisory Committee of the Missouri Bar Administration, and Hon. Marion Spicer, Clerk of the Supreme Court of Missouri, Appellees.**

**No. 18885.**

United States Court of Appeals Eighth Circuit.

March 12, 1968.

Charles F. Hamilton, St. Louis, Mo., for appellant, F. Leland Jones, atty., pro se, on the brief.

D. Jeff Lance, St. Louis, Mo., for appellees, Frederick H. Mayer, St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Chief Judge, MATTHES, Circuit Judge, and HARRIS, Chief District Judge.

PER CURIAM.

This action is a sequel to a disciplinary proceeding in the Supreme Court of Missouri resulting in the suspension of F. Leland Jones, an attorney, from the practice of law in Missouri for a minimum period of three years. The facts underlying Jones' solicitation of personal injury claims, through the agency of and in conjunction with one Walter Candy, in violation of Rules 4.27 and 4.28 of the

1. Joined as defendants in this action were Fred B. Hulse, General Chairman of the Bar Committees of the Missouri Bar Administration, Marion Spicer, Clerk of the Supreme Court of Missouri, and four other members of The Advisory Committee of the Missouri Bar Administration, appointed pursuant to Rule 5.14 of the Rules of the Supreme Court.

2. An affidavit, attached to the motion to dismiss, filed by one of the attorneys for appellees, incorporated in support of that

Supreme Court of Missouri, V.A.M.R., can be found in the opinion of the Supreme Court of Missouri, not officially published.

A petition for rehearing filed by Jones was denied by the Missouri Supreme Court on February 14, 1966. On February 15, 1966 that Court, in response to Jones' motion, ordered its mandate stayed for a period of 90 days. Thereafter, Jones, appellant herein, petitioned the Supreme Court of the United States for a writ of certiorari to review the order of suspension, which was denied on October 12, 1966. In re Jones, 385 U.S. 866, 87 S.Ct. 126, 17 L.Ed.2d 93 (1966).

Following the denial of certiorari Jones promptly filed this action on October 14, 1966 in the United States District Court for the Eastern District of Missouri. On the same day the Supreme Court of Missouri again stayed its mandate presumably until the outcome of the federal litigation. In response to Jones' second amended complaint, filed on February 28, 1967, defendants,[1] appellees herein, filed a motion to dismiss or alternatively for summary judgment.[2] The district court, Honorable Roy W. Harper, Chief Judge, granted appellees' motion to dismiss on the ground that it lacked jurisdiction over the subject matter of the action. Jones v. Hulse, 267 F.Supp. 37 (E.D.Mo.1967).

In brief appellant's second amended complaint alleges that the decision of the Supreme Court of Missouri resulted from and was an integral part of state disciplinary proceedings in which appellant's federal constitutional rights to due process of law and freedom of speech and association were violated.[3]

motion the opinion of the Supreme Court of Missouri and the petition for certiorari in the United States Supreme Court.

3. The complaint alleges that appellant's action arises "under the First, Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act, 42 U.S.C.A. sec. 1983; * * *" How the appellant's civil rights were violated is not delineated in the complaint.

Appellant predicates the alleged deprivation of his constitutional rights on several premises. In particular he submits that the General Chairman and other members of The Advisory Committee, who prosecuted appellant's misconduct in a disciplinary proceeding before the Missouri Supreme Court, (1) knowingly and intentionally introduced and relied on the perjurious testimony of Walter Candy in their brief and oral argument before that Court, and (2) misrepresented to the Supreme Court of Missouri that they had voluntarily complied with appellant's motion to produce certain evidence, whereas in fact they had suppressed evidence favorable to appellant for fear that "Candy might implicate them in his giving of perjurious testimony." From these premises appellant argues that although the Supreme Court expressly disavowed any reliance on the perjurious testimony of Candy, the Court nonetheless either consciously or unconsciously was compelled to and did in fact predicate its judgment on such testimony and thereby deprived appellant of his constitutional right to a fair hearing.

In the nature of relief appellant prayed for an injunction (1) permanently enjoining the members of The Advisory Committee from initiating, taking or participating in any action or proceeding to enforce the mandate of the Supreme Court of Missouri, and (2) restraining the Clerk of the Supreme Court from issuing the mandate.

We affirm. The limited circumstances under which a federal court can scrutinize a state disbarment proceeding have been clearly delineated by the United States Supreme Court in the landmark case of Selling v. Radford, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917). Although *Selling* is factually distinguishable in that it involved a proceeding instituted in the Supreme Court to strike Radford's name from the roll of attorneys of that Court, its teachings are apposite for the reason that the Supreme Court took into consideration the validity of a judgment of the Michigan Supreme Court disbarring Radford. In speaking to the effect of the state court action the Supreme Court narrowly circumscribed its scope of review of disbarment proceedings:

"[W]e are of [the] opinion that we should recognize the condition created by the judgment of the state court unless, from an intrinsic consideration of the state record, one or all of the following conditions should appear: 1. That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not, consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do." 243 U.S. at 50–51, 37 S.Ct. at 378–379.

The Supreme Court again had occasion to consider the effect of a state judgment disbarring an attorney in Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). In this case the United States District Court for the Eastern District of Louisiana had ordered petitioner's name stricken from its roll of attorneys by reason of his disbarment by the Supreme Court of Louisiana for personal misconduct, despite his admitted mental incompetency at the time of the misconduct. The Court of Appeals affirmed, and the Supreme Court granted certiorari to review the propriety of the district court's action. The problem which confronted the Supreme Court concerned the recognition to be accorded the state court judgment and the jurisdiction of the federal courts to override that determination. The Supreme

Court readopted the standards of Selling v. Radford, supra, stating, *inter alia*:

"It is not for this Court, except within the narrow limits for review open to this Court, as recently canvassed in Konigsberg v. [State Bar of] California, 353 U.S. 252 [77 S.Ct. 722, 1 L.Ed. 2d 810], and Schware v. Board of Bar Examiners, 353 U.S. 232 [77 S.Ct. 752, 1 L.Ed.2d 796], to sit in judgment on Louisiana disbarments, and we are not in any event sitting in review of the Louisiana judgment."[4] 354 U.S. at 281, 77 S.Ct. at 1276.

The Supreme Court, however, found "grave reason" under the rationale of Selling v. Radford to refuse to extend recognition to the state court judgment in a federal disbarment proceeding. The Court intimated that acceptance of the state court mandate as binding on the federal courts under the facts of that case " 'would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do, Id. [Selling v. Radford], at 51 [37 S.Ct. 377].'" Theard v. United States, supra, 354 U.S. at 282, 77 S.Ct. at 1277. The district court's order of disbarment was accordingly reversed on the basis that "the principles of right and justice" did not require a federal court to enforce the disbarment of an attorney whose misconduct occurred during a siege of severe mental abnormality.

This Court has similarly adhered to the principles enunciated in Selling v. Radford, supra. See, e. g., In re Noell, 93 F. 2d 5 (8th Cir. 1937), where we refused to recognize as valid an order of suspension by the state court based on proceedings, which by reason of lack of notice and opportunity to be heard, were lacking in due process. Unlike the present situation, however, our review of a state suspension order in *Noell* arose as the result of a proceeding to strike the name of the attorney from the roll of the bar of this Court. See also In re Rhodes, 370 F.2d 411 (8th Cir. 1967), cert. denied 386 U.S. 999, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967). Other federal courts have similarly embraced the Selling v. Radford rationale in disbarment proceedings originating in the district court or Court of Appeals. See, e. g., In re Ruffalo, 370 F.2d 447 (6th Cir. 1966), cert. granted, 389 U.S. 815, 88 S.Ct. 30, 19 L.Ed.2d 66 (1967); Howard v. United States District Court for D. of C., 318 F.2d 521 (10th Cir. 1963); In re Crow, 283 F.2d 685 (6th Cir. 1960); In re MacNeil, 266 F.2d 167 (1st Cir. 1959), cert. denied, 361 U.S. 861, 80 S.Ct. 120, 4 L.Ed.2d 103 (1959); In re Bennethum, 196 F.Supp. 541 (D.Del.1961); cf. Saier v. State Bar of Michigan, 293 F.2d 756, 759–760 (6th Cir. 1961), cert. denied, 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961).[5]

Apart from *Noell* and *Rhodes* and other cases, which, as we have seen, involved proceedings to suspend or disbar attorneys in the federal courts, the Courts of Appeals have consistently refrained from entertaining an original action to review the validity of a state court judgment. Clark v. State of Washington, 366 F.2d 678 (9th Cir. 1966); Gately v. Sutton, 310 F.2d 107 (10th Cir. 1962).

The alleged denial of due process and violation of appellant's other constitutional rights as well as the deprivation of his civil rights, assertedly resulting

---

4. In *Schware* the Board of Bar Examiners refused petitioner's application to take the state bar examination primarily because of his past affiliation with the Communist Party. In *Konigsberg* petitioner was denied a license to practice law on similar grounds. Since both cases involved a serious question as to whether the respective petitioners were deprived of due process of law by virtue of the state procedure involved, the Supreme Court reviewed the cases on *petition for*

*certiorari*. In our case, however, the Supreme Court denied certiorari to review appellant's suspension despite the presentation of similar due process arguments to that Court.

5. *Saier* was an original action filed in United States District Court for alleged deprivation of plaintiff's civil rights. The district court dismissed the complaint for failure to state a cause of action. The dismissal was affirmed.

from the use of Candy's perjurious testimony and the suppression of statements taken from Candy, were fully considered by the Supreme Court of Missouri on exceptions to the Commissioner's report, and on petition for rehearing. These identical questions were also presented to the Supreme Court of the United States in appellant's petition for certiorari. Concededly, the procedures in the Missouri Court conformed to the Rules of that Court. The duly constituted Advisory Committee acted with complete authority. The Supreme Court of Missouri responsibly discharged its function and entered a judgment which is responsive to and adequately supported by competent evidence. That Court, moreover, expressly disclaimed any reliance on the testimony of Candy as a basis for its judgment. Throughout the protracted hearings before the Commissioner,[6] and in the Supreme Court, appellant was represented by able counsel. There is no semblance of support for the claim that appellant has been denied due process, or that his suspension resulted from a deprivation of any of his constitutional guaranties.

Irrespective of how appellant labels his lawsuit, we are convinced that his action is tantamount to an appeal or a petition to review the propriety of the state court order.

The pronouncement of the Supreme Court in Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), is apropos here:

"If the constitutional questions stated in the * * * [complaint] actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. [Citations omitted] Under the legislation of Congress, no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character. * * * To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." 263 U.S. at 415–416, 44 S.Ct. at 150.

See also Pilkinton v. Pilkinton, 389 F.2d 32 (8th Cir. 1968); Evanson v. Northwest Holding Company, 368 F.2d 531 (8th Cir. 1966), cert. denied, 386 U.S. 1004, 87 S.Ct. 1347, 18 L.Ed.2d 432 (1967); Jenson v. Olson, 353 F.2d 825 (8th Cir. 1965); Hanna v. Home Insurance Company, 281 F.2d 298 (5th Cir. 1960), cert. denied, 365 U.S. 838, 81 S.Ct. 751, 5 L.Ed.2d 747 (1961).

Our analysis of the cited authorities leads us to the conclusion that state disbarment or suspension proceedings under exceptional circumstances may be reviewed by the Supreme Court of the United States on petition for certiorari or in a proceeding to remove the disbarred attorney as a member of the bar of the Supreme Court of the United States or of an inferior federal court. We have found no authority authorizing a federal court to entertain an original proceeding designed to set aside and vacate a disciplinary judgment of a state court, particularly where, as here, the attorney has exhaustively presented all of his constitutional arguments to the state court and to the Supreme Court by petition for certiorari.

Perhaps under appropriate circumstances a disbarred attorney could resort to the federal courts for relief. We make no definitive holding in that regard. All we are required to decide is whether on

---

6. The record discloses that The Advisory Committee of the Missouri Bar filed an information in the Supreme Court of Missouri charging appellant with professional misconduct on July 22, 1959. A total of fifty days of hearings were conducted before the Special Commissioner, resulting in more than 4,000 pages of transcript and countless exhibits.

this record appellant is entitled to invoke the original jurisdiction of the federal courts for the purpose of obtaining an adjudication as to the validity of the judgment of the Missouri Court. We are fully convinced that no grounds exist for federal jurisdiction and that the order of dismissal was proper.

In view of our conclusion that this case is beyond the jurisdiction of the federal courts, we pretermit discussion of other grounds relied upon by appellees for affirmance.

Affirmed.

Our mandate shall issue forthwith.